UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

YOLANDA BURTON,

                Plaintiff,

                                          **DECISION and ORDER**
     -vs-                                 **No. 6:12-CV-6347(MAT)**

CAROLYN COLVIN, Commissioner of
Social Security,

                Defendant.

_____


## I.   Introduction

     Plaintiff Yolanda Burton ("Plaintiff"), represented by counsel, brings this action pursuant to Titles II and XVI of the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security ("the Commissioner")[1] denying her application for Disability Insurance Benefits ("DIB") and Social Security Insurance ("SSI"). This Court has jurisdiction over the matter pursuant to 42 U.S.C. §§ 405(g), 1383(c). Presently before the Court are the parties' motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

_____

[1]     Carolyn W. Colvin has replaced Michael J. Astrue as the Commissioner of Social Security. She therefore is automatically substituted as the defendant in this action pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure.

## II.   Procedural History

On April 27, 2009, Plaintiff protectively filed applications for DIB and SSI, alleging disability beginning July 14, 2008. After the claims were denied, Plaintiff requested a hearing. She appeared with her attorney via videoconference before Administrative Law Judge Lawrence Levey ("the ALJ") on January 24, 2011. T.22-60.[2] The ALJ issued an unfavorable decision on January 25, 2011. T.5-21. Plaintiff filed a request for review with the Appeals Council, which declined jurisdiction on May 7, 2012. T.1-4.

Plaintiff then timely filed her complaint in this Court. During the pendency of this action, Plaintiff filed a second application and was granted benefits with a disability onset date of January 26, 2011. The relevant time period for purposes of this action, therefore, is July 14, 2008, through January 24, 2011.

## III.  Summary of the Administrative Record

### A.   Medical Evidence Prior to the Onset Date

Plaintiff saw orthopedist M. Gordon Whitbeck, Jr., M.D. on March 28, 2005, complaining of lower back pain and left leg pain going down to the foot for the past 2 to 3 months. T.249. The pain was constant, worsening with standing and walking. On examination, straight leg raising ("SLR") was positive on the left, producing pain down to the calf. T.250. Magnetic resonance imaging ("MRI") of

---

[2]
Numerals preceded by "T." refer to pages of the administrative transcript, submitted as a separately bound exhibit by Defendant.

the lumbar spine performed on January 27, 2005, showed degenerative changes at L4-5 and L5-S1, and a large left paracentral disc herniation at L5-S1 with significant nerve root impingement. Dr. Whitbeck's assessment was L5-S1 disc herniation and left sciatica. Dr. Whitbeck noted that Plaintiff still was working despite her "obvious impairment." T.249.

Dr. Whitbeck performed a discectomy at L5-S1 on April 20, 2005. T.251-52. On June 1, 2005, Plaintiff still had significant pain in her back and left leg to about knee-level. T.253. The most likely cause was inflammation around the nerve root, and it was expected to improve over time. Dr. Whitbeck prescribed Neurontin, Darvocet, and anti-inflammatories, and stated that she was totally temporarily disabled until June 20, 2005. T.253.

On July 27, 2005, Plaintiff informed Dr. Whitbeck that her leg pain had resolved although she still had a small amount of lower back pain. T.254. She had returned to work and was using an ergonomic chair purchased by her employer. Id.

On August 26, 2005, Plaintiff returned to Dr. Whitbeck with complaints of pain across the lower portion of her back, along with pain and numbness in both legs down to her feet, worse on the left. T.255. The pain was constant, difficult to tolerate, and increased with bending, standing, and walking. Id. After an emergency room visit due to the pain, she was prescribed Hydrocodone and Soma. At her examination with Dr. Whitbeck, she had positive SLR on the left

with pain down the left leg, and equivocal SLR on the right. T.255. Dr. Whitbeck opined that the recurrent bilateral sciatica might represent a recurrent disc herniation or a disc herniation at the middle level of the spine. The main finding based on the MRI was a large, recurrent left-sided disc extrusion at L5-S1, where Plaintiff had significant degenerative disc disease. T.256. Dr. Whitbeck ordered an MRI, prescribed Hydrocodone and Flexeril, and stated Plaintiff was temporarily totally disabled. T.255.

On November 1, 2005, Plaintiff underwent re-exploration of L5-S1 with left L5-S1 discectomy; capstone spacer insertion at L5-S1; transforaminal lumbar interbody fusion at L5-S1; bilateral lateral fusion at L5-S1 with autogenous iliac crest graft; and nonsegmental instrumentation at L5-S1. T.257-59.

At a follow-up appointment with Dr. Whitbeck on February 9, 2006, Plaintiff was 75% to 80% improved, although she had some residual lower back pain and left sciatic symptoms. T.262. She remained temporarily totally disabled. Id.

On April 4, 2006, Plaintiff told Dr. Whitbeck that she was having daily back spasms, intermittently throughout the day. However, she wished to return to work, so Dr. Whitbeck released her with a moderate temporary partial disability on April 20, 2006, limiting her to part-time work (6 hours per day) with no lifting of greater than 10 to 15 pounds, no twisting or bending, and the ability to frequently change position. T.263.

-4-

On June 12, 2006, Plaintiff was doing well and was in her first trimester of pregnancy. She was to be returned to work without restriction on July 3, 2006. T.264.

In 2007, Plaintiff complained of stress at home and at work to her primary care physician, Louise Richardson, M.D.

On January 22, 2007, Plaintiff saw Dr. Whitbeck and was "doing quite well in terms of back and leg symptoms." T.362. She was able to move around the room without difficulty. Dr. Whitbeck stated that she had made a good recovery and should restart some of her physical therapy exercises. Id.

On March 7, 2008, Plaintiff told Dr. Whitbeck that the nonsteroidal anti-inflammatories ("NSAIDs") he had prescribed had resolved her symptoms. T.360, 363-66. However, she was no longer working. On examination, she had no focal atrophy and no focalized tenderness in the lumbar spine. Strength was full and sensation was intact. T.360.

On April 4, 2008, Plaintiff told Dr. Whitbeck she was not taking any medications and still was not working. At that point, she was 2 years and 5 months out from an L5-S1 discectomy and posterolateral fusion. The exacerbation of some left proximal thigh symptoms had been resolved with prescription NSAIDs. T.360-62.

On June 3, 2008, Dr. Richardson diagnosed Plaintiff with hypertension. She issued a note, on June 5, 2008, that Plaintiff could not return to work until further notice. T.272.

On July 7, 2008, Plaintiff saw Dr. Richardson complaining of a sore throat, fever, and dizziness. Dr. Richardson advised rest and fluids, and to stay out of work until July 9, 2008. T.276.

**B.    Medical Records After the Onset Date (July 14, 2008)**

On July 14, 2008, Plaintiff saw Dr. Richardson in follow-up, reporting a sore throat, swollen glands, dizziness, and aches and pains. T.284. She was treated for strep pharyngitis, and suffered an allergic reaction 2 days later with swelling of the ankles and hands, as well as a rash. On November 11, 2008, Plaintiff told Dr. Richardson that she had been experiencing urinary incontinence since August. Dr. Richardson recommended a urological consult. T.283.

Plaintiff was seen by Dr. Richardson on May 4, 2009, due to vomiting after eating certain foods, and lower back and left leg pain. On examination, Plaintiff had decreased sensation in the left thigh and tenderness in the left lumbar region. Dr. Richardson diagnosed gastroesphogeal reflux disease ("GERD") and chronic low back pain with radiculopathy. T.270. For pain management, Dr. Richardson recommended Advil and Tylenol; for GERD symptoms, she recommended Zantac. Id.

Plaintiff saw urologist Melanie Butler, M.D. regarding her incontinence and constipation on February 20, 2009. T.265-66. Plaintiff reported 2 episodes of urine leakage without sensation. Dr. Butler diagnosed urinary incontinence, unspecified; urine

retention, unspecified; and constipation, unspecified. Id. She recommended a trial of Vesicare for 2 weeks; if no improvement was seen, a full work-up would be done. T.266.

Plaintiff saw Dr. Richardson on April 20, 2009, complaining of vomiting. She had discontinued Prevacid and Cymbalta. Dr. Richardson diagnosed hyperlipidimia, GERD, hypertension, chronic anxiety, fatigue, and increasing irritability. T.281. Dr. Richardson told her to restart Simvastin and Prevacid. Id.

On May 29, 2009, Plaintiff saw electromyelographer Harold Lesser, M.D., on referral from Drs. Richardson and Whitbeck, for nerve conduction studies to determine the cause of her continuing back and leg pain. T.307-08. Plaintiff told Dr. Lesser that she had been experiencing increasing left-sided leg and back pain following the delivery of her son in January 2007. T.307. Nerve conduction studies of the lower extremities were notable for an absent tibial H-reflex on the left but otherwise were unremarkable. T.308. Dr. Lesser's impression was that her examination was "[a]bnormal" based on "electrodiagnostic evidence of a presumably old left S1 radiculopathy supported by the absent tibial H-reflex and ankle jerk on the left." T.308. Dr. Lesser noted that Plaintiff had "unusual complaints of unilateral buttock weakness in concert with progressive numbness in the heels bilaterally." Id. He ordered an MRI of the lumbar spine to see if there was any epidural fibrosis that might produce the progressive neurologic complaints of the

type she describes. Failing that, Plaintiff might need "additional imaging studies of the thoracic spine and/or further workup for a central basis for her current bladder and buttock complaints." Id.

An MRI of the lumbar spine on June 1, 2009, by Eric Spitzer, M.D., see T.352-53, revealed a diffuse disc bulge at L3-4 with a left paracentral disc protrusion indenting the ventral thecal sac, encroaching on the left L4 nerve root and contributing to mild spinal canal narrowing and mild bilateral neural foraminal narrowing. The left paracentral disc protrusion and overall diffuse disc bulging were new from the prior exam. T.352. At L4-5, there was diffuse disc bulging combined with bilateral facet degenerative change and ligamentum flavum thickening, contributing to mild spinal canal narrowing. At L5-6, there was diffuse disc bulging but no spinal canal narrowing and minimal neural foraminal narrowing. T.352.

Consultative physician Harbinder Toor, M.D. examined Plaintiff on July 2, 2009. T.314-17. Plaintiff reported a history of depression and anxiety since 2002; asthma since 1995; urinary incontinence; and back pain. Her lumbar spine flexion was 50 degrees; extension was 0 degrees; lateral flexion was 30 degrees; and rotation was 30 degrees, with "pain in the back." T.316. SLR was positive bilaterally, both supine and sitting, at 20 degrees on the left and 30 degrees on the right. Id. With regard to her lung function, she had mild obstruction on spirometry

testing. Id. Dr. Toor diagnosed the following: history of lower back pain/injury, asthma, hypertension, acid reflux, high cholesterol, anxiety, and depression. T.317. He opined that Plaintiff had "mild to moderate" limitations in her ability to walk, sit, bend, and lift; and should avoid irritants or other activities that could precipitate asthma symptoms. Id. Her prognosis was "fair".

Also on July 2, 2009, consultative psychologist Kavitha Finnity, Ph.D. examined Plaintiff. T.309-12. Plaintiff reported difficulty sleeping, a dysphoric mood, hopelessness, excessive emotionality, anxiety, and irritability. T.309. She had recurrent thoughts of suicide, without intent or plan; and excessive emotionality with anxiety. Id. Dr. Finnity's diagnosis was depressive disorder, not otherwise specified. For her medical source statement, Dr. Finnity stated that Plaintiff "can follow and understand simple directions and perform simple tasks", although she "may have some difficulty with attention and concentration and maintaining a regular schedule." T.311. She "can learn new tasks and perform complex tasks" and "make appropriate decisions", but she "has difficulty relating with others and dealing with stress." Id. Dr. Finnity recommended that Plaintiff seek individual psychological and psychiatric treatment. Id. Her prognosis was "fair." T.312.

On July 27, 2009, state agency non-examining review psychiatrist, Z. Mata, M.D. opined that Plaintiff did not suffer from any severe mental impairments. T.326-28.

On October 26, 2009, Plaintiff's primary care physician, Dr. Richardson, completed a Medical Assessment Of Ability To Do Work Related Activities (Physical) form. T.348-50. Dr. Richardson opined that Plaintiff has lifting/carrying; standing/walking; and sitting restrictions but did not provide specifics, e.g., how many hours in an 8-hour day can Plaintiff sit. T.348. Dr. Richardson stated that Plaintiff can "never" climb, stoop, crouch, kneel, or crawl, and can "occasionally" balance.

Plaintiff saw Dr. Whitbeck on March 26, 2010. T.358-59. His assessment was lower back pain and left sciatica, and he explained conservative treatment modalities (epidurals and physical therapy) that would provide temporary relief. Dr. Whitbeck opined that she remained totally disabled for the past year and a half. T.359. On January 4, 2011, Dr. Whitbeck signed a form titled "Medical Listing 1.04" which set forth the criteria for Listing 1.04(A) (disorders of the spine with evidence of nerve root compression) and Listing 1.04(C) (disorders of the spine with lumbar spinal stenosis). The form stated, "Please circle as appropriate for Yolanda Burton that she meets or <u>functionally equals</u> [sic]." T.370 (underline in original). Dr. Whitbeck signed the form, but apparently did not see

or understand the instructions and failed to circle anything on the form.

On January 8, 2011, Dr. Richardson issued a second Medical Assessment Of Ability To Do Work Related Activities (Physical) form, which imposed limitations that precluded even sedentary work.[3] T.372-73. This report is discussed in detail further below.

## IV. Standard of Review

This Court's function is not to determine de novo whether a claimant is disabled, Pratts v. Chater, 94 F.3d 34, 37 (2d Cir. 1996) (citation omitted), but rather to evaluate whether the Commissioner applied the correct legal standard in making the determination and, if so, whether such determination is supported by substantial evidence in the record. E.g., Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000) (citing 42 U.S.C. § 405(g); Bubnis v. Apfel, 150 F.3d 177, 181 (2d Cir. 1998)).

This Court must independently determine if the Commissioner applied the correct legal standards in determining that the claimant is not disabled. See Townley v. Heckler, 748 F.2d 109, 112

---

[3]

See SSR 96-9P, 1996 WL 374185, at *6 (S.S.A. July 2, 1996) ("In order to perform a full range of sedentary work, an individual must be able to remain in a seated position for approximately 6 hours of an 8-hour workday, with a morning break, a lunch period, and an afternoon break at approximately 2-hour intervals. If an individual is unable to sit for a total of 6 hours in an 8-hour work day, the unskilled sedentary occupational base will be eroded.").

(2d Cir. 1984). "Failure to apply the correct legal standards is grounds for reversal." Id. Therefore, this Court first reviews the Commissioner's application of the pertinent legal standards, and then, if the standards were correctly applied, considers the substantiality of the evidence. See Johnson v. Bowen, 817 F.2d 983, 985 (2d Cir. 1987) (stating that "[w]here there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles").

## V.   Eligibility for SSI and DIB

A claimant must establish that she is disabled when applying for either SSI or DIB: "Both statutes define 'disability' as the 'inability to engage in any substantial gainful activity . . . .'" Bowen v. City of N.Y., 476 U.S. 467, 470 (1986). Thus, in situations where claimants have filed concurrent applications for SSI and DIB, courts have addressed the issue of a claimant's disability in terms of meeting a single disability standard under the Act. See, e.g., Hankerson v. Harris, 636 F.2d 893, 895 n.2 (2d Cir. 1980) (stating that the disability standards for SSI and DIB are "virtually identical" and the standard for judicial review "is also identical").

To establish disability under the Act, a claimant bears the burden of demonstrating (1) that she has been unable to engage in substantial gainful activity by reason of a physical or mental impairment that has lasted or could have been expected to last for a continuous period of at least twelve months, and (2) that the existence of such impairment has been demonstrated by evidence supported by medically acceptable clinical and laboratory techniques. 42 U.S.C. § 1382c(a)(3); see also Barnhart v. Walton, 535 U.S. 212, 215 (2002).

## VI.  The ALJ's Decision

The ALJ applied the five-step sequential evaluation processed set out in 20 C.F.R. §§ 404.1520, 416.920. See also Williams v. Apfel, 204 F.3d 48, 48-49 (2d Cir. 1999). At the first step, the ALJ determined that Plaintiff met the insured status requirements through December 31, 2013, and had not engaged in substantial gainful activity since July 14, 2008, the alleged onset date. T.10. Plaintiff's severe impairments were lumbar degenerative disc disease with radiculopathy, asthma, high cholesterol, hypertension, urinary incontinence, anxiety, and depression. Id. The ALJ determined that none of these impairments, considered singly or in combination, met or medically equaled one of the listed impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. T.11.

The ALJ found Plaintiff retained the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R.

§ 404.1567(b) and § 416.967(b), except she requires the option to alternate between sitting and standing at 1-hour increments; can only occasionally use her left lower extremity for pushing, pulling, and operation of foot controls; and must work in close proximity to a restroom facility. T.12. In addition, Plaintiff is limited to performing simple, routine, and repetitive tasks with no greater than occasional interaction with the public, coworkers, and supervisors. T.12.

Plaintiff's past relevant work was as a medical secretary (Dictionary of Occupational Titles ("DOT") #201-362-014, SVP 6, sedentary). Because the ALJ found Plaintiff limited to simple, routine, and repetitive tasks, he found her incapable of doing her past relevant work, which was performed at a skilled level. T.16.

Because Plaintiff's ability to perform all or substantially all of the requirements of light work, the ALJ consulted a vocational expert ("VE") regarding the extent to which Plaintiff's limitations eroded the unskilled light occupational base. The VE testified that a person of Plaintiff's age, and with her education, work experience, and RFC could perform the requirements of representative occupations such as small object assembler, subassembler of electronic equipment (DOT #729.684-054, 400,000 jobs nationally) and lens matcher, optical goods (DOT #713.687-030,

40,000 jobs nationally). T.16. Accordingly, the ALJ found Plaintiff not disabled.

## VII. Plaintiff's Contentions

### A.   Erroneous Residual Functional Capacity Assessment

Plaintiff contends that the ALJ did not correctly apply the relevant legal standards in assessing her RFC. In particular, Plaintiff claims the ALJ misapplied the treating physician rule by failing to give controlling weight to Dr. Richardson's January 8, 2011 Medical Assessment Of Ability To Do Work Related Activities (Physical) form . Plaintiff also contends that the RFC finding lacks a function-by-function assessment of her work-related abilities as limited by her impairments.

#### 1.   The ALJ's Application of the Treating Physician Rule

Pursuant to the "treating physician rule," the ALJ must give controlling weight to a treating physician's opinion when that opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); see also Halloran v. Barnhart, 362 F.3d 28, 31–32 (2d Cir. 2004); Shaw v. Chater, 221 F.3d 126, 134 (2d Cir. 2000). Medically acceptable clinical and laboratory diagnostic techniques include consideration of a "patient's report of complaints, or history, [a]s an essential diagnostic tool." see

-15-

also Green-Younger v. Barnhart, 335 F.3d 99, 107 (2d Cir. 2003). If the ALJ gives the treating physician's opinion less than controlling weight, however, he must specify "good reasons," Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir.2004) (quoting 20 C.F.R. § 404.1527(d)(2)), and must justify the lesser weight given by reference to the following factors: (1) length of the treatment relationship and the frequency of examination, (2) nature and extent of the treatment relationship, (3) supportability of the opinion, (4) consistency of the opinion with the other medical evidence, (5) specialization of the treating physician, and (6) other factors that are brought to the attention of the court. 20 C.F.R. §§ 404.1527(d)(1)-(6), 416.927(d)(1)-(6); see also Shaw, 221 F.3d at 134; Clark v. Commissioner of Social Sec., 143 F.3d 115, 118 (2d Cir. 1998).

Here, Plaintiff's primary care physician, Dr. Richardson, completed a Medical Assessment Of Ability To Do Work Related Activities (Physical) form on January 8, 2011. With regard to lifting/carrying, Dr. Richardson stated that Plaintiff could lift and carry no more than 5 to 10 pounds; when asked what was the "Maximum Occasionally" Plaintiff could lift, Dr. Richardson put a check mark, apparently indicating that 5 to 10 pounds was the maximum that Plaintiff could lift occasionally. T.372.

With regard to standing/walking, Dr. Richardson indicated that these activities were affected by Plaintiff's impairments. Id. When

asked how many hours Plaintiff could stand and/or walk in an 8-hour day, Dr. Richardson answered "none". Id. When asked how many hours in an 8-hour workday total Plaintiff could stand and/or walk without interruption, Dr. Richardson again answered "none". T.372. When asked how many hours in an 8-hour day could Plaintiff sit, Dr. Richardson answered "3-4 hrs" total and "1 hr" without interruption. T.373. In her narrative later in the report, Dr. Richardson stated that Plaintiff was unable "to bend, stand, walk or sit for more than 1-2 hrs." T.374.

As for postural activities, Dr. Richardson indicated that Plaintiff can "never" climb, balance, stoop, crouch, kneel, or crawl. Id. She found that Plaintiff has limitations in reaching and pushing/pulling but no limitations in handling, feeling, seeing, hearing, and speaking. She has restrictions on working at heights; moving; using machinery; being exposed to temperature extremes; and working around chemicals, dust, fumes, humidity, and vibration. T.374. Dr. Richardson noted that even though Plaintiff tried to return to work, "the absenteeism secondary to her problems jeopardized her job." Id. She indicated that there "aren't any other surgical options [for Plaintiff] and physical therapy has been exhausted." Id.

It bears noting that Dr. Richardson's report was the only function-by-function assessment by an acceptable medical source. Although a Single Decision Maker ("SDM") completed an RFC

assessment in Plaintiff's case, courts have found that an RFC assessment from an SDM is "entitled to no weight as a medical opinion", Sears v. Astrue, Civil Action No. 2:11-CV-138, 2:11-CV-138, 2012 WL 1758843, at *6 (D. Vt. May 15, 2012) (collecting cases), because SDMs are not medical professionals, id.; accord, e.g., Box v. Colvin, No. 12-CV-1317 (ADS), ___ F. Supp.2d ___, 2014 WL 997553, at *19 (E.D.N.Y. Mar. 14, 2014).

The ALJ gave Dr. Richardson's opinion "little weight", T.15, because "it seem[ed] to be based primarily on the claimant's subjective findings" and there were "few objective reports or findings to substantiate such a restricted residual functional capacity," id. This finding is problematic for several reasons. First, the Second Circuit has held that a claimant's subjective complaints and history are "an essential diagnostic tool." Burgess v. Astrue, 537 F.3d 117, 128 (2d Cir. 2008) (quotation omitted). Second, the record contains objective medical reports and clinically significant findings that are consistent with Dr. Richardson's RFC assessment. As discussed further below, the ALJ's explanation for discounting Dr. Richardson's opinion is contradicted by the record evidence and accordingly cannot constitute a "good reason" as required by the regulations.

At the time Dr. Richardson issued her opinion, Plaintiff had already undergone 2 surgeries on her lumbar spine. Objective testing indicated radiculopathy and continuing encroachment of the

L4 nerve root affecting her legs. Specifically, in March 2008, electromyelographer Dr. Lesser interpreted Plaintiff's test results as abnormal insofar as there was electrodiagnostic evidence of a left S1 radiculopathy and abnormal clinical findings of an absent tibial H-reflex and an ankle jerk on the left. T.308. An MRI of the lumbar spine on June 1, 2009, revealed L3-4 left paracentral disc protrusion encroaching on the left L4 nerve root; mild degenerative disc disease at L3-4 and L4-5 with annular fissuring in the posterior disc at L4-5; and L4-5 mild spinal canal narrowing and bilateral neural foraminal narrowing. T.352-53. Orthopedic specialist Dr. Whitbeck interpreted the MRI as showing moderate stenosis at L4-5 and some extension of the disc extrusion at LL3-4 into the left forearm. T.359. At an appointment on March 26, 2010, Dr. Whitbeck noted that Plaintiff was "well known" to his practice. T.358. He described her as moving slowly around the exam room; she could forward flex only to floor-level and could extend her back past neutral with "moderate difficulty." T.358. He diagnosed low back pain and left sciatica and noted that she remained totally disabled. T.359. Consultative examiner Dr. Toor, whose opinion the ALJ gave "significant weight", made clinical findings supporting Dr. Richardson's opinion, namely, that Plaintiff had positive SLR in both legs, both supine and sitting, at 20 degrees in the left leg and 30 degrees in the right; and could only bend at the waist to 50 degrees. T.316.

In sum, the clinical findings by various physicians and the objective medical evidence (including MRIs and nerve conduction studies) contradict the ALJ's assertion that only Plaintiff's subjective complaints supported Dr. Richardson's opinion. The ALJ therefore should have assigned controlling weight to Dr. Richardson's opinion. See Muntz v. Astrue, 540 F. Supp.2d 411, 421 (W.D.N.Y. 2008) ("[T]he ALJ offers no explanation for discounting the record evidence concerning the plaintiff's nerve root impingement, neuro-anatomic distribution of pain, limitation of spinal motion, muscle atrophy, sensory loss, motor loss, and positive straight leg raising tests. The opinions of plaintiff's treating physicians with respect to those aspects of his condition, which were supported by objective medical evidence and in many cases corroborated by the opinions of examining physicians, should have been afforded controlling weight.").

## 2.   Lack of Function-by Function Assessment

Plaintiff contends that the ALJ erred by arriving at her RFC without providing a function-by-function analysis relating to Plaintiff's ability to perform the necessary work activities of light work. See SSR 96-8p, 1996 WL 374184, at *1 (S.S.A. July 2, 1996) (stating that before the ALJ assesses the claimant's RFC, the ALJ must consider the claimant's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis). The ALJ also must address

nonexertional limitations, which include "difficulty performing the manipulative or postural functions of some work such as reaching, handling, stooping, climbing, crawling, or crouching." 20 C.F.R. §§ 404.1569a(c)(vi), 416.969a(c)(vi). Only when there is substantial evidence of each physical requirement listed in the regulations can RFC be expressed in terms of the exertional levels of work (sedentary, light, medium, heavy, and very heavy). Hogan v. Astrue, 491 F. Supp.2d 347, 354 (W.D.N.Y. 2007); see also LaPorta v. Bowen, 737 F. Supp. 180, 183 (N.D.N.Y. 1990).

As noted above, the ALJ found that Plaintiff has the RFC to perform "light work" except she requires the option to alternate between sitting and standing at 1-hour increments and has certain other physical limitations. The regulations explain that

> [l]ight work involves lifting no more than 20 pounds at a time with *frequent lifting or carrying* of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a *good deal of walking or standing, or when it involves sitting most of the time* with some pushing and pulling of arm or leg controls. *To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.* If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. §§ 404.1567(b), 416.967(b) (emphases supplied); see also SSR 83-14 ("[M]ost light jobs-particularly those at the unskilled level of complexity-require a person to be standing or walking most of the workday. . . ."). However, the ALJ failed specifically

-21-

determine Plaintiff's ability to sit, stand, walk, lift, carry, and bend in the context of an 8-hour workday. See Molina v. Barnhart, 04 CIV. 3201(GEL), 2005 WL 2035959, at *8 (S.D.N.Y. Aug. 17, 2005) ("The ALJ's finding that Molina is capable of light work is insufficient because he failed to make a finding as to Molina's ability to stoop or bend."). As Plaintiff notes, no acceptable or other medical source opined that she was able to stand or walk most of the workday, notwithstanding her various impairments. The ALJ did not explain the basis for his unstated conclusion that Plaintiff would be capable of walking for up to 6 hours per 8-hour day. Likewise, the ALJ did not provide any rationale for his implicit finding that Plaintiff could fulfill the sitting, standing, lifting, carrying, and bending requirements of a full range of light work.

The SSA rulings indicate that an ability to bend at least occasionally is required for both light and sedentary work. Id. (citing SSR 83-14, 1983 WL 31254, at *4 (S.S.A. 1983) ("[T]he frequent lifting or carrying of objects weighing up to 10 pounds (which is required for the full range of light work) implies that the worker is able to do occasional bending of the stooping type; i.e., for no more than one-third of the workday to bend the body downward and forward by bending the spine at the waist."). Here, Dr. Richardson and Dr. Toor indicated that Plaintiff's had restricted forward flexion which clearly detracts from her ability

-22-

to bend, stoop, and lift. The ALJ should have acknowledged these limitations and made accommodations for them in the RFC.

Moreover, consultative examiner Dr. Toor, whose opinion the ALJ gave "significant weight", made clinical findings at odds with the ALJ's RFC, namely, that Plaintiff had positive SLR in both legs, both supine and sitting, at 20 degrees in the left leg and 30 degrees in the right; and could only bend at the waist to 50 degrees. T.316. The ALJ purported to rely on Dr. Toor's finding that Plaintiff had "mild-to-moderate" limitations is sitting, standing, walking, bending, and lifting, but  this was error. Dr. Toor's assessment of a "mild-to-moderate" limitation on a whole range of different physical activities, without more, is too vague to be meaningful or to provide substantial evidence to support the ALJ's RFC analysis. See Minor v. Astrue, No. 11-CV-06556-MAT, 2012 WL 5948952, *4 (W.D.N.Y. Nov. 28, 2012) ("Although [the consultative examiner] gave the opinion that Plaintiff had only 'moderate' limitations in her lumbar spine mobility and 'mild' limitations in prolonged standing, walking, and using stairs, inclines and ladders, these opinions do not constitute 'substantial evidence'.") (citing Curry v. Apfel, 209 F.3d 117, 123 (2d Cir. 2000) (holding that opinions from consultative examiner that a claimant has "mild" or "moderate" limitations, "without additional information", are "so vague as to render [the opinions] useless"); other citation omitted)).

B.    **Erroneous Credibility Analysis**

The ALJ here found that although Plaintiff has medically determinable impairments that reasonably could be expected to produce her alleged symptoms, her statements concerning the intensity, persistence, and limiting effects of her limitations are "not credible to the extent they are inconsistent with the above residual functional capacity assessment." T.14. The Court has found no support in the regulations or the caselaw from this Circuit supporting the propriety of basing a credibility determination solely upon whether the ALJ deems the claimant's allegations to be congruent with the ALJ's own RFC finding. See, e.g., Smollins v. Astrue, No. 11-CV-424, 2011 WL 3857123, at *11 (E.D.N.Y. Sept. 1, 2011) ("[The ALJ's] analysis of Smollins's credibility is flawed not only in its brevity, but in its acceptance as a foregone conclusion of Smollins's capacity to perform sedentary work. Instead of comparing Smollins's symptoms, as described by Smollins herself and her doctors, to the objective medical and other evidence of record as required by the Social Security regulations, [the ALJ] merely compared Smollins's statements regarding her symptoms to his own RFC assessment."); Mantovani v. Astrue, No. 09-CV-3957, 2011 WL 1304148, at *5 (E.D.N.Y. Mar. 31, 2011) (similar). Indeed, the Seventh Circuit has specifically rejected the boilerplate language used by the ALJ in Plaintiff's case, noting that it "implies that ability to work is determined first

and is then used to determine the claimant's credibility." <u>Bjornson v. Astrue</u>, 671 F.3d 640, 645 (7th Cir. 2012).

Because "[t]he assessment of a claimant's ability to work will often depend on the credibility of her statements concerning the intensity, persistence and limiting effects of her symptoms[,]" <u>Otero v. Colvin</u>, 12-CV-4757, 2013 WL 1148769, at *7 (E.D.N.Y. Mar. 19, 2013), it is not logical to decide a claimant's RFC prior to assessing her credibility. <u>Id.</u> To use that RFC to discredit the claimant's subjective complaints merely compounds the error. <u>Id.</u>; cf. <u>Faherty v. Astrue</u>, No. 11-CV-02476(DLI), 2013 WL 1290953, at *14 (E.D.N.Y. Mar. 28, 2013) ("The ALJ explained the reason for giving Dr. Tranese's medical source statement significant weight was that it was consistent with her RFC. Such reasoning is circular and flawed. The ALJ should use medical opinions to determine Plaintiff's RFC, and, therefore, cannot give medical opinions weight based on their consistency with the RFC.") (internal citation to record omitted).

"If the ALJ decides to reject subjective testimony concerning pain and other symptoms, he must do so explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief and whether his determination is supported by substantial evidence." <u>Brandon v. Bowen</u>, 666 F. Supp. 604, 608 (S.D.N.Y. 1987) (citing, <u>inter alia</u>,

<u>Valente v. Secretary of Health and Human Servs.</u>, 733 F.2d 1037,
1045 (2d Cir. 1984); footnote omitted).

The ALJ also misrepresented the record in connection with his
skepticism about Plaintiff's statement that her back condition
worsened after the birth of her second child. He noted that she
allegedly did not report this to Dr. Whitbeck on January 22, 2007.
T.13. However, this would have been very soon after she gave birth
in that same month. The ALJ ignored the fact that Plaintiff did
inform Dr. Lesser, the electromyelographer, that her back and leg
pain had been increasing since she gave birth in January 2007. The
ALJ's other reasons for discounting Plaintiff's subjective
complaints were not reasonable. For instance, the ALJ stated that
since Plaintiff admitted she could perform "extensive daily
activities", she was not suffering from disabling symptoms.
However, Plaintiff was performing these "daily activities" at home,
on her own schedule–not in the context of a competitive work
environment where she would not be able to take breaks or rest as
needed. In any event, "performance of daily activities is not
necessarily a clear and convincing reason to discredit a
[claimant's] testimony." <u>Provencio v. Astrue</u>, No. CV
11-141-TUC-BPV, 2012 WL 2344072, at *12 (D. Ariz. June 20, 2012)
(citing <u>Webb v. Barnhart</u>, 433 F.3d 683, 687-88 (9th Cir. 2005) ("The
mere fact that a plaintiff has carried on certain daily activities,
such as grocery shopping, driving a car, or limited walking for

exercise, does not in any way detract from her credibility as to her overall disability. One does not need to be 'utterly incapacitated' in order to be disabled.") (quoting <u>Vertigan v. Halter</u>, 260 F.3d 1044, 1050 (9th Cir. 2001) (brackets omitted)).

Furthermore, the ALJ failed to give credit for Plaintiff's good work record. SSA regulations provide that the ALJ "will consider all of the evidence presented, including information about [the claimant's] prior work record." 20 C.F.R. § 404.1529(c)(3); <u>see also</u> SSR 96-7p, 1996 WL 374186, at *5 (S.S.A. July 2, 1996) (instructing that credibility determinations should take account of "prior work record"). The Second Circuit has observed that "a good work history may be deemed probative of credibility." <u>Schaal v. Apfel</u>, 134 F.3d 496, 502 (2d Cir. 1998). Plaintiff, who was born in 1972, had enough earnings to provide full quarters of coverage beginning in 1992, and ending when she could no longer work due to her impairments. T.159. Indeed, in 2006, she told Dr. Whitbeck that she desired to return to work notwithstanding her back pain.

### C.   Step Five Error

Plaintiff argues that the testimony of the vocational expert ("the VE") cannot provide substantial evidence to support the ALJ's decision due the ALJ's errors in formulating Plaintiff's RFC.

For the opinion of a VE to constitute substantial evidence, the hypothetical questions posed to the VE must include all of the claimant's limitations that are supported by medical evidence in

the record. See Aubeuf v. Schweiker, 649 F.2d 107, 114 (2d Cir. 1981) (a "vocational expert's testimony is only useful if it addresses whether the particular claimant, with his limitations and capabilities, can realistically perform a particular job"); see also Burns v. Barnhart, 312 F.3d 113, 123 (3d Cir. 2002) ("A hypothetical question posed to a vocational expert must reflect all of a claimant's impairments. . . .") (internal citations and quotation marks omitted). A vocational expert's response to an inadequate hypothetical cannot constitute "substantial evidence" to support a conclusion of no disability. Morse v. Shalala, 16 F.3d. 865, 874 (8th Cir. 1994) (quoted in Melligan v. Chater, No. 94-CV-944S, 1996 WL 1015417, at *8 (W.D.N.Y. Nov. 14, 1996)); see also Burns, 312 F.3d at 123 ("Where there exists in the record medically undisputed evidence of specific impairments not included in a hypothetical question . . . , the expert's response is not considered substantial evidence.").

Consultative examiner Dr. Finnity opined that Plaintiff has difficulty relating with others and dealing with stress. T.311. The ALJ incorporated Plaintiff's limitations in relating with others in his RFC determination, but he did not address her limitations in dealing with stress, or explain why he did not do so. SSR 85-15 states in pertinent part that because the "response to the demands of work is highly individualized, the skill level of a position is not necessarily related to the difficulty an individual will have

in meeting the demands of the job." SSR 85-15, 1985 WL 56857, at *6 (S.S.A. 1985).

Here, because the hypothetical questions were based upon an RFC that did not realistically and accurately describe Plaintiff's limitations, the VE's testimony cannot provide substantial evidence to support the finding of no disability. E.g., Futia v. Astrue, No. 1:06-cv-0961(NAM), 2009 WL 425657, at *9 (N.D.N.Y. Feb. 19, 2009).

### D.   Remedy

The fourth sentence of 42 U.S.C. § 405(g) provides a reviewing court with the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g); see also Shalala v. Shaefer, 509 U.S. 292, 297 (1993). A court should order the payment of benefits when a remand for further proceedings is unnecessary because the record contains persuasive proof of disability. Carroll v. Secretary of Health and Human Serv., 705 F.2d 638, 644 (2d Cir. 1981). Here, the ALJ's failure to assign controlling weight to the medical source statement of Plaintiff's treating physician, his discounting of Plaintiff's testimony, and his hypothetical questions to the VE were erroneous for the reasons set out above. The VE testified that if the limitations assigned by Dr. Richardson and testified to by Plaintiff were credited, Plaintiff would be

unable to maintain competitive gainful employment. Because it is clear from the record that were such evidence credited, the ALJ would be required to find Plaintiff disabled, and because there are no outstanding issues needing resolution before a determination of disability can be made, the Court finds that it is appropriate to remand the matter for immediate calculation and payment of benefits from July 14, 2008, through January 25, 2011.

**VIII.    Conclusion**

 For the foregoing reasons, Defendant's motion for judgment on the pleadings is denied, and Plaintiff's motion for judgment on the pleadings is granted. The Commissioner's decision is reversed, and the matter is remanded for calculation and payment of benefits.

 **SO ORDERED.**

    S/Michael A. Telesca

    _____
    HONORABLE MICHAEL A. TELESCA
    United States District Judge

DATED:  June 2, 2014
    Rochester, New York